UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

BARBARA A. PRESCOTT,           )
                               )
    Plaintiff,                 )
                               )
v.                             )     Case No. CV406-241
                               )
MICHAEL J. ASTRUE,             )
Commissioner, Social Security  )
Administration,                )
                               )
    Defendant.                 )

## REPORT AND RECOMMENDATION

Barbara Ann Prescott has filed a complaint appealing the Social Security Commissioner's denial of her applications for disability benefits. She contends that the Commissioner's decision is not supported by substantial evidence and is not based on correct legal principles. For the reasons set forth below, the Court should **AFFIRM**.

## I. BACKGROUND

In the Fall of 2002, Prescott applied for disability benefits under both Title II and Title XVI of the Social Security Act. Doc. 1. Her applications

alleged a disability date of June 30, 1999. Id. The Social Security Commissioner denied her applications, first on May 5, 2003 and again upon reconsideration on July 14, 2004. Id. Then, at Prescott's request, an Administrative Law Judge (ALJ) held a hearing about her applications on August 9, 2005. Id.

On March 29, 2006, the ALJ issued a decision denying Prescott's benefits applications. Id. After the appeals council rejected Prescott's request for a review, the ALJ's decision became the final decision of the Commissioner. Id. Prescott then filed a complaint in this Court, contending that the ALJ's decision is incorrect as a matter of law and is not supported by substantial evidence.

## II. LEGAL PRINCIPLES

### A. Standard of Review

Affirmance of the ALJ's decision is mandatory if the ALJ's conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d

1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but is less than a preponderance," Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion," Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm even if the evidence preponderates against the Commissioner's findings. Id. at 1158–59 (quotation marks and citations omitted). The substitution of this Court's judgment for that of the Commissioner is not allowed. Barnes v. Sullivan, 932 F.2d 1356, 1357–58 (11th Cir. 1991).

**B.  Burden of Proof**

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether a claimant has met her burden of proof, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 404.1520; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that she has not

engaged in substantial gainful activity. Jones, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. Id. Then, at step three, if the claimant's impairment meets or equals a listed impairment, she is automatically found disabled. Id. If not, she must advance to step four, which requires her to prove her inability to perform her past relevant work. Id. And at stage five, if she cannot perform past relevant work, the burden shifts to the Commissioner to show that other work the claimant is capable of performing is available in the national economy in significant numbers. Id.

The ALJ followed each step in this case. First, he determined that Prescott had engaged in substantial gainful activity since she filed her benefits applications in 2002, but also found that she had not engaged in any such activity since January 1, 2005. Doc. 6 at 25. Second, the ALJ found that Prescott had two severe impairments: hypertension and osteoarthritis. Id. Third, the ALJ found that Prescott did not automatically qualify for disability benefits because her impairments were not the equivalent of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fourth, the ALJ found that the Prescott was

incapable of performing her past relevant work. Id. And fifth, he found that she could perform other jobs available in the national economy. Id. Therefore, he determined that she was not entitled to receive disability benefits pursuant to the Social Security Act. Id.

## III. LEGAL DISCUSSION

Prescott makes seven contentions of error in the ALJ's decision. The Court will consider each one of those in turn.

### A. The ALJ's treatment of Prescott's testimony and the testimony of her medical providers

Prescott's first contention is not directed at a specific step in the five-step analysis. She makes a general contention that the ALJ erred by failing to credit her testimony and the testimony of her medical providers regarding the nature and extent of her impairments. Doc. 13 at 6–7. In disputing the ALJ's credibility assessment, Prescott argues that the ALJ gave undue weight to her prior revocation of disability benefits. Apparently, Prescott received disability benefits in the early 1990s because of alleged schizophrenia. Id. at 7. Those benefits were revoked, and at her benefits hearing, the ALJ commented that Prescott was simply alleging "the same

5

impairments and limitations" as before. Id. According to Prescott, the facts involved in the revocation of her prior benefits are stale and should have no bearing on the disposition of this case. Instead, the ALJ should have given greater weight and attention to her current impairments, which supposedly include a herniated disc and severe osteoarthritis. Id.

Prescott's first contention is a non-starter. The ALJ's decision provides specific examples of inconsistencies in the record that justify his decision to not credit her personal testimony. The ALJ noted that Prescott's initial applications for disability benefits stated that she had been unable to work since June 30, 1999. Doc. 6 at 14. Later, she reported that she stopped working in 2002. Id. But in December 2002, she reported that she had not worked since 1998. Yet, her earnings records indicate that she earned $7,192.76 in 2003 and $12,954.64 in 2004. Id. She did not inform the Administration that she was working. When asked in October 2004 about the last time she had worked, she responded that she did not now. Id. Only when the ALJ asked her directly did she admit that she worked in 2004 at McDonald's. Id.

Furthermore, on February 1, 2003, Prescott told a physician

performing a consultive examination that she could not read and could write only her name, but the ALJ found evidence that she graduated high school, conducted Bible study lessons, and read on a daily basis. Id. Furthermore, Prescott told one examining physician that she had never been married, id. at 302, while informing another one in a later examination that she had been married and divorced. Id. at 302.

While those inconsistencies alone constitute substantial evidence in support of the ALJ's decision not to credit Prescott's testimony, the medical evidence further supports his conclusion. Although Prescott was diagnosed with a paracentral disc herniation in July 2003, she worked at the substantial gainful activity level through 2004. Id. at 16. Although she is hypertensive, she has neglected to take her medication. Id. at 15. A doctor who gave Prescott a psychological examination in 1999 opined that she was malingering for financial gain. Id. at 330. That sentiment was echoed in a 2002 medical evaluation report in which the examining physician noted that Prescott was "minimally credible." Id. at 372. There is substantial evidence supporting the ALJ's decision not to credit Prescott's testimony.

## B. Poverty's Effect on Prescott's Ability to Obtain Treatment for her Ailments

Prescott's complaint takes issue with the ALJ's repeated reference to her failure to take her medication. Doc. 13 at 8. She asserts her poverty prevented her from obtaining needed medication and argues that the ALJ erred by including her failure to take her medicines within his decision-making process. Id.

As Prescott correctly points out in her brief, courts have stated that an ALJ must consider a claimant's poverty in determining why she failed to seek proper treatment for alleged ailments. See, e.g., Dover v. Bowen, 784 F.2d 335, 337 (8th Cir. 1986); Overjoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986); see also Richardson v. Apfel, 44 F. Supp. 2d 1264, 1266 (M.D. Fla. 1998) (concluding that ALJ erred by denying benefits without first finding a pattern of wilful failure to take medications and then making additional finding that but for the failure, the claimant would have no disability).

Without disputing the premise of Prescott's contention—that poverty-compelled failure to take needed medicines is not a proper ground for denying a benefits application—substantial evidence exists that poverty did not prevent her from receiving needed treatment. While Prescott had

claimed that she was unemployed in 2002 and 2003, her earnings records indicate that she was paid $2,335.56 in 2002 and $7,192.76 in 2003. Doc. 6 at 92. Furthermore, she earned $12,954.64 in 2004. Id.

"It is a decision for the ALJ, in the first instance, to determine a [claimant]'s motivation for failing to follow a prescribed treatment plan." Hanna v. Chater, 930 F. Supp. 378, 390–91 (N.D. Iowa 1996). Here, the ALJ did not base his decision on Prescott's failure to take her medication. He used her inconsistent testimony about her adherence to her medicine regiment to illustrate why her testimony was not credible. Doc. 6 at 23. And even if the ALJ had determined that Prescott's disabilities, if any, were a direct result of her failure to take her prescribed medicines, the earnings statements in the record constitute substantial evidence that her failure to take her medicines was not a result of poverty.

C. **Prescott's Combined Impairments**

Prescott's third contention stems from the amalgamation of illnesses she alleges. In determining whether a person is disabled, 20 C.F.R. §§ 404.1523, 416.923 instruct the ALJ to consider "the combined effect of all [claimant's] impairments without regard to whether any such impairment,

if considered separately, would be of sufficient severity." Id. At the hearing, she claimed to suffer from hypertension, acute arthritis, a herniated disc, anemia, obesity, incontinence, dental problems, heart problems, and overall body pain. She contends that the ALJ's decision should be reversed because he considered only her herniated disc and hypertension. Doc. 13 at 7.

The ALJ found that her dental and cardiac concerns, as well as her alleged incontinence, obesity, anemia, and body pain were either non-severe or not medically determinable impairments. Doc. 6 at 19. And he specifically found that her herniated disc and uncontrolled hypertension were severe impairments.[1] Id. Nevertheless, the ALJ specifically noted that Prescott did not have "an impairment or combination of impairments" that would automatically qualify her for disability benefits. Id. Accordingly, Prescott's contention that the ALJ did not consider the combined effect of

---

[1] Page 7 of the ALJ's decision states that Prescott has two severe impairments, a herniated disc and hypertension. Doc. 6 at 19. Page 13 also states that Prescott has two severe impairments, but lists those impairments as hypertension and osteoarthritis. Id. at 25. It is unclear whether the ALJ intended to characterize all three impairments as severe. Regardless of whether the ALJ intended to characterize all three impairments as severe, there is substantial evidence supporting his decision to deny disability benefits. The ALJ noted on page 3 of his decision that she continued working at the "substantial gainful activity level" for more than a year after being diagnosed with a herniated disc. Id. at 15. And no other evidence indicates that the ALJ's ultimate decision is not supported by substantial evidence.

all her ailments is belied by the ALJ's decision.

   D.   **Prescott's Alleged Disabling Pain**

Prescott's next contention is that he ALJ gave inadequate consideration to her claims of disabling pain. Doc. 13 at 7. In <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991), the court established a three-part test for determining whether a claimant's pain is debilitating:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

<u>Id.</u> at 1223. According to Prescott, the ALJ failed to recognize the evidence supporting her underlying medical condition, ignored objective evidence of her disabling pain, and provided no meaningful discussion of her pain within its decision. Doc. 13 at 7–8.

The ALJ's decision refutes that contention. In fact, the ALJ dedicates at least five pages of his decision to explaining why most of Prescott's claims, including claims of pain, are not credible. Within that discussion the ALJ cites the diagnoses of several physicians and references blatant inconsistencies in Prescott's testimony and in the record. Doc. 6 at 15–21.

This contention lacks merit.

E.  **Availability of Tobacco Sampling Positions in Georgia**

Prescott's fifth contention is based on the fifth step in the five-step disability determination framework. As mentioned above, after the claimant demonstrates a disability that prevents her from performing her past relevant work, the burden shifts to the Commissioner to show that other work the claimant is capable of performing is available in the national economy in significant numbers. Jones, 190 F.3d at 1228. In this case, the ALJ concluded that Prescott did not qualify for disability benefits in part because (1) she was capable of performing work as a tobacco sampler and (2) there are approximately 170 tobacco sampling positions in this region. Doc. 13. Prescott argues that the ALJ's conclusion is not founded upon substantial evidence because the ALJ's decision does not specify what is meant by the phrase "in this region." Id.

This contention lacks any modicum of merit. First, the vocational expert specifically stated that the 170 positions were available "in Georgia." Doc. 6 at 417. Second, the tobacco sampler position is only one of three positions the ALJ found suitable for Prescott. The other two, parking lot

attendant and carton packer, were also found to be available in Georgia. Id. at 25. And third, the regulations do not require that the work be available in Georgia, they require only that the work be available in sufficient numbers in the *national* economy. Jones, 190 F.3d at 1228; Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999) ("The Act, its legislative history and the regulations make it clear that the test is whether work exists in the national economy, not in plaintiff's neighborhood.").

### F. Reliability of Vocational Expert's Opinion

Prescott further challenges the availability of the parking lot attendant and carton packer positions that the vocational expert testified were available in Georgia. Doc. 13 at 10. She makes two arguments. First, she argues that those jobs are not available in sufficient numbers in Savannah for the her to reasonably be expected to work in either capacity. However, as explained in the previous subsection, the relevant standard is availability in the national economy, not the local economy.

Second, Prescott argues that the ALJ did not properly consider her incontinence when determining that the parking attendant or carton packer positions constituted suitable employment. However, the ALJ did not find

that she actually suffered from an inability to control her bladder. She alleged it at the hearing, and is alleging it again in her complaint. But the record evidence shows only that she was diagnosed with a urinary tract infection in December of 2001, Doc. 6 at 277–78, and with frequent urination in July of 2003, id. at 183–84. Not only was she working at McDonald's during 2003, which undermines her argument that her alleged incontinence would prevent her from working, there was no indication in either report that her urinary problems would impede her work routine. Thus, this contention lacks merit.

### G. The ALJ's Hypothetical Adequately Sets Forth Prescott's Impairments

Prescott's final contention is that hypothetical posed to the vocational expert did not include all of her impairments and therefore renders his decision inadequate as a matter of law. Doc. 13 at 12. She alleges that the ALJ erred by not including her alleged pain, fatigue, and weakness within his hypothetical. Id.

But an ALJ may omit from his hypothetical any allegations he does not accept as true. Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). An alleged limitation that is not supported by substantial evidence need not be

included in an ALJ's hypothetical. Jordan v. Heckler, 835 F.2d 1314, 1316 (10th Cir. 1987). Here, the ALJ found Prescott's allegations of pain, fatigue, and weakness not credible. Doc. 6 at 23.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and is based upon correct principles of law, it should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this 9Th day of November, 2007.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA